02-11-478-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00478-CR

 

 









 
 
 Edward
 Lynn Russell
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 396th District
 Court
  
 of
 Tarrant County (1254067R)
  
 February
 21, 2013
  
 Opinion
 by Justice Meier
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

 

By_________________________________

   
Justice Bill Meier

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00478-CR

 

 


 
 
 Edward Lynn Russell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 396th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
two points, Appellant Edward Lynn Russell appeals his conviction on eleven
counts of violating a civil commitment requirement as a sexually violent
predator.  See Tex. Health & Safety Code Ann. § 841.085(a)
(West 2010).  We will affirm.

          In
February 2008, Russell agreed to a final judgment identifying him as a sexually
violent predator as defined in health and safety code section 841.003 and
ordering him to be civilly committed for outpatient treatment and supervision
in accordance with chapter 841 of the health and safety code.  See id.
§§ 841.001–.151 (West 2010 & Supp. 2012).  In addition to addressing Russell’s
treatment and supervision, the order of civil commitment required him to
“reside in supervised housing at a Texas residential facility under contract
with the Council on Sex Offender Treatment (Council) or at another location or
facility approved by the Council”; to “submit to tracking under a global
positioning satellite (GPS) monitor or other monitoring system provided”; to
“exactingly participate in and comply with the specific course of treatment
provided by the Council”; and to “comply with all written requirements of the
Council and case manager.”[2]  The commitment order
also contained the following notice:  “EDWARD RUSSELL shall strictly comply
with the commitment requirements of Health & Safety Code § 841.082 and
this Order of Commitment, or will be charged with a felony of the third degree,
which may be enhanced to a more severe punishment.”

          At
the outset of his commitment and treatment, Russell reviewed and agreed to
abide by all of the rules and requirements contained in the following
documents:  “Civil Commitment Requirements:  Standard Requirements of
the Treatment Program”; “Council on Sex Offender Treatment Supervision
Requirements”; “Council on Sex Offender Treatment Additional Supervision
Requirements”; and “Council on Sex Offender Treatment Global Positioning
Tracking Service Requirements for MTD.”  In 2009 and 2010, Russell signed
additional documents evidencing his agreement to abide by various requirements
of his commitment.

          During
the course of his outpatient treatment and supervision, Russell failed to
comply with numerous written treatment requirements.[3]
 Consequently, in May 2010, he was unsuccessfully discharged early from the sex
offender treatment program.  Russell was later indicted on eleven counts of violating
a civil commitment requirement as a sexually violent predator.[4]
 At trial, Russell’s former case managers, Wesley Griffin and Lawrence Daniels,
testified about Russell’s violations of his treatment requirements.  After
convicting Russell on each count, and upon his plea of true to the repeat
offender notice, the jury assessed Russell’s punishment at twenty years’
confinement and a $10,000 fine for each count.  The trial court sentenced
Russell accordingly.[5]

          In
his first and second points, Russell argues that, as applied to him, chapter
841’s civil commitment statutory scheme violated his federal due process and
state due course of law rights and the separation of powers provision of the
Texas constitution because it allowed private persons—his case managers—(a) to
create a treatment plan with requirements that, if violated, subjected him to discharge
from the treatment program without a hearing and criminal prosecution and (b) to
unilaterally determine whether he violated the civil commitment order for
failing to comply with a civil commitment requirement.  See U.S. Const.
amend. XIV; Tex. Const. art. I, § 19, art. II, § 1.

          We
initially observe that Russell raised constitutional objections to chapter 841
in his motion to quash, which he filed—and the trial court denied without
considering any evidence—the same day the trial began.  Although Russell
articulated due process and due course of law grounds, he did not assert any
argument based upon the Texas constitution’s separation of powers provision.  Because
Russell raises his separation of powers argument for the first time on appeal,
he failed to preserve his second point for appellate review.  See Tex.
R. App. P. 33.1(a); Curry v. State, 910 S.W.2d 490, 496 (Tex. Crim. App.
1995) (reasoning that as-applied challenge cannot be raised for the first time
on appeal); Shaffer v. State, 184 S.W.3d 353, 363 (Tex. App.—Fort Worth
2006, pet. ref’d) (holding same).  We overrule Russell’s second point.

          Assuming
without deciding that Russell’s due process and due course of law arguments are
preserved,[6] they are nonetheless
unpersuasive.  Russell complains about his case managers “set[ting] treatment
plans,” but the legislature expressly required the Council (now known as the
“Office”) to “approve . . . a treatment plan for the
committed person to be developed by the treatment provider.”  Tex. Health &
Safety Code Ann. § 841.083(a).  Thus, while the treatment provider
develops the treatment plan, the Office approves it.  Under this framework, Russell’s
case managers did not have unbridled authority to devise—and require Russell to
abide by—any civil commitment requirement that they could potentially imagine
without the requirement first being approved by the Office.  Indeed, here, each
of the documents that Russell reviewed and approved upon entering the treatment
program contains a notation at the bottom right corner indicating the date that
the “CSOT,” or Council on Sex Offender Treatment, last revised it.

          Further,
the case managers did not have the power to determine or define what did and
did not constitute “criminal conduct,” as Russell argues.  That responsibility
lies with the legislature.  Exercising that authority, it has determined that
“[a] person commits an offense if, after having been adjudicated and civilly
committed as a sexually violent predator under this chapter, the person
violates a civil commitment requirement imposed under Section 841.082.”  Id.
§ 841.085(a).  Subsection four of section 841.082 requires the sexually
violent predator’s “participation in and compliance with a specific course of
treatment provided by the office and compliance with all written requirements
imposed by the case manager or otherwise by the office.”  Id. § 841.082(a)(4). 
Russell’s order of civil commitment included this requirement.

          Nor
could Russell’s case managers have unilaterally determined whether he
“violated” the civil commitment order for failing to comply with a civil
commitment requirement.  Although the case managers were tasked with reporting
Russell’s violation of a commitment requirement, and the indictment accused
Russell of violating a commitment requirement, it was the jury that had the
ultimate responsibility of determining whether Russell committed a “violation” of
his commitment order.  See Tex. Code Crim. Proc. Ann. art. 21.01 (West
2009) (providing that the indictment accuses the person named therein of some
act or omission which, by law, is declared to be an offense), art. 36.13 (West
2007) (providing that the jury is the exclusive judge of the facts); see
also Tex. Health & Safety Code Ann. § 841.085(a).  According to
the record, including the trial court’s charge to the jury at the guilt phase,
that is precisely what happened in this case.  Russell had both notice of the
charges against him and an opportunity to be heard.  See, e.g., Mathews
v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (addressing
due process argument).  We overrule Russell’s first point and affirm the trial
court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 21, 2013









[1]See Tex. R. App. P. 47.4.





[2]The Council on Sex
Offender Treatment (the Council) is now called the Office of Violent Sex
Offender Management.  See Act of May 28, 2003, 78th Leg., R.S., ch.
347, § 16, 2003 Tex. Gen. Laws 1505, 1514, amended by Act of
May 23, 2011, 82nd Leg., R.S., ch. 1201, § 3, 2011 Tex. Sess. Law
Serv. 3197, 3199 (current version at Tex. Health & Safety Code Ann. § 841.002(4)
(West Supp. 2012).





[3]Among other things,
Russell failed to maintain a current thought journal, caused a “bracelet-gone
alert” (regarding his GPS system) to be activated, failed to take medication,
masturbated to a deviant fantasy involving a male child, and had sex with a
young male resident of the halfway house.





[4]The State waived five
other counts.





[5]The trial court ordered
the sentences to run concurrently.





[6]See State ex rel.
Lykos v. Fine, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (“‘Since [a
contention that a statute is unconstitutional as applied] requires a recourse
to evidence, it cannot be properly raised by a pretrial motion to quash the charging
instrument.’”); State v. Rosseau, No. 04-10-00866-CR, 2011 WL 6207037,
at *7–8 (Tex. App.—San Antonio Dec. 14, 2011, pet. granted) (stating that
an as-applied constitutional challenge “may not be resolved pretrial because it
depends on development of the specific facts of the case showing how the
statute is being applied to the defendant” and holding that as-applied
constitutional challenge was not preserved because it was raised in motion to
quash and no evidence was presented at pretrial hearing on motion to quash); but
see Lawson v. State, 283 S.W.3d 438, 443 (Tex. App.—Fort Worth 2009, pet.
ref’d) (“For this court to review an attack on the constitutionality of a
statute ‘as applied,’ Lawson must first have raised the issue before trial by
written motion and have obtained a ruling on the motion.”).