

# NUMBERS 13-13-00612-CR & 13-13-00613-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROBERT MICHAEL ARTEAGA,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

## On appeal from the 424th District Court
## of Burnet County, Texas.

# DISSENTING OPINION

**Before Justices Benavides, Perkes and Longoria**
**Dissenting Opinion by Justice Perkes**

I respectfully dissent with the majority's holding on issue one.  I would conclude

that appellant was egregiously harmed by the erroneous jury charge.

# I. JURY CHARGE ERROR

## A. The Jury Charge

Appellant was convicted for multiple counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011 (West, Westlaw through 2015 R.S.). The offenses were charged as first-degree felonies under Texas Penal Code section 22.011(f). *See id.* The indictment alleged under each count that the victim was "a person whom the defendant was prohibited from marrying." Sexual assault of a child "is a felony of the second-degree, except that an offense under this section is a felony of the first-degree if the victim was a person whom the actor was prohibited from *marrying* or *purporting to marry* or with whom the actor was prohibited from *living under the appearance of being married* under Section 25.01." *Id.* at § 22.011(f) (emphasis supplied). Section 25.01 defines the offense of bigamy and employs similar language. An individual commits the offense of bigamy if:

> (1) he is legally married and he:
>
> > (A) *purports to marry* or *does marry* a person other than his spouse in this state, or any other state or foreign country, under circumstances that would, but for the actor's prior marriage, constitute a marriage; or
> >
> > (B) lives with a person other than his spouse in this state *under the appearance of being married*; or
>
> (2) he knows that a married person other than his spouse is married and he:
>
> > (A) *purports to marry* or *does marry* that person in this state, or any other state or foreign country, under circumstances that would, but for the person's prior marriage, constitute a marriage; or

2

> (B) lives with that person in this state *under the appearance of being married.*

TEX. PENAL. CODE ANN. § 25.01 (West, Westlaw through 2015 R.S.) (emphasis supplied).

The charge of the court required the jury to find as an element of each count of sexual assault that the victim "was then and there a person whom [appellant] was prohibited from marrying," but did not otherwise define bigamous conduct.   Instead, the charge included the following definition:

> A marriage is void if one party to the marriage is related to the other as:
>
> 1)  an ancestor or descendant, by blood or adoption;
> 2)  a brother or sister, of the whole or half blood or by adoption;
> 3)  a parent's brother or sister, of the whole or half blood or by adoption; or
> 4)  a son or daughter of a brother or sister, of the whole or half blood or by adoption[.]

This language tracks the provisions of Texas Family Code section 6.201, titled "Consanguinity."   *See* TEX. FAM. CODE ANN. § 6.201 (West, Westlaw through 2015 R.S.).

## B.   Applicable Law

The trial court must charge the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense or offenses charged. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2015 R.S.).   The "law applicable to the case" also includes the statutory definitions that affect the meaning of the elements of the offense.   *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009).   Therefore, a trial court must communicate to the jury each statutory definition that affects the meaning of an element of the offense.   *Villarreal*, 286 S.W.3d at 329.   "[A]bstract or definitional

3

paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996) *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). Reversible error occurs in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph. *Id.* (citing *Riley v. State*, 830 S.W.2d 584 (Tex. Crim. App. 1992); *Sandig v. State*, 580 S.W.2d 584, 586 (Tex. Crim. App.1979)).

**C. Analysis**

The jury charge failed to provide the proper statutory definition of "prohibited from marrying," as set out in Texas Penal Code section 25.01, which prohibits bigamy. This error was compounded by the trial court's inclusion of the definition "void marriage" from the Texas Family Code which voids certain marriages on the basis of consanguinity. I believe a proper error analysis requires this Court to construe Texas Penal Code section 22.011(f), including its explicit reference to section 25.01. To determine if error exists in this case, we must address an issue of statutory construction. *See Carmona v. State,* 76 S.W.3d 29, 31 (Tex. App.—Amarillo 2001, pet. ref'd). Because statutory construction is a question of law, we conduct a de novo review. *Druery v. State*, 412 S.W.3d 523, 533 (Tex. Crim. App. 2013).

"Where [statutory language] is clear and unambiguous, we will give effect to its plain meaning, unless that meaning would lead to absurd consequences that the legislature could not have intended." *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex.

4

Crim. App. 2014) (citations omitted). We are mindful that "every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963). "We examine statutes as a whole to contextually give meaning to every provision." *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013). We should also presume the Legislature intended a "result feasible of execution" when it enacted the statute. *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999).

The majority states that "25.01 does not have any reference to the language used in the indictment in this case 'prohibited from marrying.'" The majority then concludes that "since the language 'prohibited from marrying' used in section 22.011(f) was not used in section 25.01, proving bigamy under 25.01 would not be required in order for the State to charge under 'prohibited from marrying' in section 22.011(f)." This interpretation of the statute creates an unnecessary ambiguity as to the phrase "prohibited from marrying," which flows from a misreading of section 22.011(f) and its reference to the three "prohibitions" outlined in section 25.01.

Section 22.011(f) tracks the language of the bigamy statute and explicitly incorporates its provisions by reference. In reading the operative penal code sections together, it is clear that the language "under section 25.01" found in section 22.011(f) modifies each prohibition listed: "marrying," "purporting to marry," and "living under the appearance of being married." To read the statute otherwise would ignore the alignment of each provision's use of the terms "marry," "purport[ing] to marry," and "living under the

5

appearance of being married." The majority's construction of section 22.011(f) renders two of the three prohibitions without any clear definition. We are to avoid a construction of a statute that would render a provision meaningless, nugatory, or mere surplusage. *See Ludwig v. State*, 931 S.W.2d 239, 242 n. 9 (Tex. Crim. App. 1996); *Cook v. State*, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995).

Rather than define bigamous conduct, the jury charge erroneously included the definition of a "void marriage" from the Family Code. The "void marriage" instruction is not derived from a penal statute, is not expressly referenced by section 22.011(f), and does not employ similar terms in describing marriages that are "void." As noted by the majority, "if a jury-charge instruction 'is not derived from the [penal] code, it is not 'applicable law' under art. 36.14." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (citing *Walters v. State,* 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)). In other areas of the Penal Code, the legislature has expressly incorporated provisions of the Family Code to define a penal provision. *See, e.g.*, TEX. PENAL CODE ANN. § § 19.06(3), 21.01(4), 22.01, 22.07(f), 22.12(3), 25.03(c-2)(2), 25.11(d), 37.14, 38.07(f)(2), 38.111(e)(2), 42.07(b)(2), 46.04(d), 47.072(d)(1), 71.022(d)(2). In enacting section 22.011(f), the legislature chose not to do so, instead citing only the bigamy statute. Under the principle of statutory interpretation known as *inclusio unius est exclusio alterius*, we presume that the purposeful inclusion of certain terms in a statute implies the purposeful exclusion of terms that are absent. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *Bidelspach v. State*, 840 S.W.2d 516, 518 (Tex. App.—

6

Dallas 1992, pet. dism'd).  Therefore, we presume that the legislature acted purposefully in including the phrase "under section 25.01" to define the prohibited conduct in section 22.011(f) without making any reference to marriages that are "void" under the consanguinity statute.

Section 22.011(f) clearly and unambiguously provides that sexual assault of a child is a first-degree felony only where the actor is prohibited under the bigamy statute from marrying the victim, purporting to marry the victim, or living with the victim under the appearance of being married.[1]  *See Reynolds*, 423 S.W.3d at 382.  Every court that has reviewed the statute has reached a similar conclusion.[2]  *See State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013) (explaining that "the 'under Section 25.01' portion of the statute suggests that the provision applies when both sexual assault and bigamous conduct are alleged"); *State v. Rosseau*, 398 S.W.3d 769, 777 (Tex. App.— San Antonio 2011) *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013) (explaining that "[section

---

[1] I disagree with the majority's conclusion that the statute's legislative history supports a contrary interpretation.  *See Wolfe v. State*, 120 S.W.3d 368, 370 (Tex. Crim. App. 2003) (explaining "because our primary goal is to carry out the legislative intent of the statute, we provide the legislative history . . . to highlight the harmony between the legislative intent and our holding today.").  House Bill 3006 introduced additional language to section 22.011(f).  Tex. H.B. 3006, 79th Leg., R.S. (2005).  The bill analysis prepared by the House Committee on Juvenile Justice and Family Issues provides that the bill "focuses on various provisions of the Penal Code, Family Code, Election and Education Codes in order to better regulate those activities associated with *bigamy and polygamy*."  House Comm. on Juv. Justice & Fam. Issues, Bill Analysis, Tex. H.B. 3006, 79th Leg., R.S. (2005) (emphasis supplied).  The bill analysis also explains that "[t]he ambiguity of current Texas law has allowed for alleged crimes to be committed under the practice of religious freedom."  *Id.*  The Legislative Budget Board's Criminal Justice Impact Statement notes that "[t]he bill would amend the Penal Code by enhancing the punishment by one class for the offense of sexual assault when the offense of bigamy is involved."  Crim. Justice Impact Statement, Tex. H.B. 3006, 79th Leg., R.S. (2005).  House Bill 3006 was not voted on by the House of Representatives, but the portion of the bill amending section 22.011(f) was later included in Senate Bill 6 under the House version of the bill.  Tex. S.B. 6, 79th Leg., R.S. (2005); Conference Comm. Report, S.B. 6, 79th Leg., R.S. (2005).  Senate Bill 6 was enacted and became effective September 1, 2005.  *Id.*

[2] Those courts include the Court of Criminal Appeals and the Austin Court of Appeals, from which this case was transferred.  Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own.  *See* Tex. R. App. P. 41.3.

22.011(f)] defines a first-degree felony sexual assault as occurring when a sexual assault has been committed under section 22.011 and when the victim was a person whom the defendant was prohibited from marrying, purporting to marry, or live with under the appearance of being married—which we refer to in this opinion as 'bigamous conduct'"); *State v. Hernandez*, 395 S.W.3d 258, 260–61 (Tex. App.—San Antonio 2012, no pet.) (concluding that bigamous conduct under section 25.01 is an element of first-degree felony sexual assault); *see also Holt v. State*, No. 03–08–00631–CR, 2010 WL 2218543, at *1 n. 1 (Tex. App.—Austin June 2, 2010, pet. ref'd) (mem. op., not designated for publication) (explaining that "[s]exual assault is a first-degree felony if the victim was a person whom the defendant was prohibited from marrying under penal code section 25.01 . . . [which] prohibits bigamy").

I do not believe that under these circumstances, the jury had a correct or complete understanding of the term "prohibited from marrying" as used in the application part of the charge. Therefore, the charge did not properly instruct the jury on the "law applicable to the case." I would conclude the charge is erroneous.

## II. EGREGIOUS HARM

I also disagree with the majority's holding that, in the event that the jury charge contained error, appellant did not suffer egregious harm.

### A. Applicable Law

Appellant did not object to the jury charge, therefore, any potential error in the charge is reviewed only for "egregious harm." *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008). "This is a difficult standard to meet and requires a showing that

8

the defendants were deprived of a fair and impartial trial." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). "[T]he error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id.* In determining whether egregious harm is shown, we look at the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* This analysis is fact specific and is done on a case-by-case basis. *Arrington v. State,* 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

## B. Analysis

### 1. The Entire Jury Charge

On this factor, the majority concludes that any error concerning inclusion of the definition of "void marriage" would be minimal. The majority notes that the definition constituted an abstract charge, and was not included in the application paragraph of the jury instruction. However, as noted above, reversible error does occur "in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph." *Plata*, 926 S.W.2d at 302. The "void marriage" definition was not merely a superfluous abstraction, as the majority concludes. Rather, the definition was necessary to the jury's understanding of the phrase "prohibited from marrying" as used in the application paragraphs of the charge. A proper definition of "prohibited from marrying" can only be derived from section 25.01.

9

The majority also states that "[i]t could be considered common knowledge that a parent cannot marry their child." While this may be true, it simply underscores the resulting harm. While any marriage between a father and daughter would result in a "void" marriage, it would not serve as evidence of bigamous conduct necessary to prove an essential element of first degree sexual assault of a child. I would conclude that this factor weighs in favor of finding egregious harm.

### 2. The State of the Evidence

"[U]nder this prong of an egregious harm review, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *Id.* at 841. The evidence at trial focused almost exclusively on whether appellant sexually assaulted HSB Doe. There was no evidence presented concerning whether HSB Doe was someone who appellant was "prohibited from marrying" under section 25.01, an essential element of the offense which the State had the burden to prove. Rather, the record reflects that neither appellant nor HSB Doe were legally married to another person at the time the charged offenses were committed. This factor also weighs in favor of finding egregious harm.

### 3. The Parties' Argument

Under this factor, "we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Id.* at 844. As the majority notes, the State explicitly relied on the definition of void marriage in its closing argument regarding whether appellant was "prohibited from marrying" the victim:

10

> We, of course, know that she's not the defendant's spouse and we also know that you can't marry your daughter. We don't even need to -- we all know that. You can't marry your daughter and the Court sets it out here that a marriage is void if it's to an ancestor or descendent by blood or adoption and then there's another categories. You can't marry your sister. You can't marry your brother, et cetera.
>
> . . .
>
> And then as the judge pointed out on the last paragraph, the special issue, do you find whether the defendant was prohibited from marrying HSB Doe, which we know is HSB Doe, and clearly the answer to that is we do, and so you would just write we do and your presiding juror can be -- can sign that form.

The State's closing argument focused the jury's attention on the erroneous "void marriage" instruction. This factor also weighs in favor of finding egregious harm.

### 4.  Other relevant information in the record

The majority notes that "[n]othing was ever raised by [a]ppellant about bigamy, void marriage, or even anyone wanting to get married." However, it was the State's burden to prove bigamous conduct as element of first-degree felony sexual assault. The State presented no evidence in this regard. I do not believe that appellant's failure to raise the issue weighs against a finding of egregious harm.

The majority also notes that "the trial court included Special Issue #1 in the jury charge to be certain the jury found the enhancement element to be true[,]" and "[t]he jury did not send out any jury notes relating to the definition of 'void' marriage[.]" I believe this simply reflects the jury's reliance on the erroneous instruction in answering Special Issue #1, and is a further indication of egregious harm.

11

### 5. Consideration of the Four Factors

A factual allegation of bigamous conduct is an element of first-degree felony sexual assault under section 22.011(f), not merely a punishment enhancement. *Hernandez*, 395 S.W.3d at 260–61. As an element of the offense, bigamous conduct must be proven beyond a reasonable doubt during the guilt/innocence phase of trial. *Id.* The inclusion of the "void marriage" definition permitted the jury to convict appellant of a first-degree felony without finding a necessary element of the offense—that the victim was a person appellant was prohibited from marrying under the bigamy statute. The prosecution specifically relied on the "void marriage" instruction in its closing argument.

As a result, appellant was deprived of a valuable right—the right to have a jury determination of every element of the alleged offense. *See Riley v. State*, 447 S.W.3d 918, 931 (Tex. App.—Texarkana 2014, no pet.) (holding that appellant was deprived of a fair trial where the jury was instructed in such a way that it was not required to find at least two elements of the offense of capital murder to be proven beyond a reasonable doubt); *In re K.A.*, 420 S.W.3d 172, 177 (Tex. App.—Amarillo 2012, no pet.) (concluding that jury charge fundamentally defective because it authorized the jury to find K.A. guilty of the offense without finding all of the elements of the offense beyond a reasonable doubt); *Lindsay v. State*, 102 S.W.3d 223, 231 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding Lindsay was harmed by the trial court's failure to include a definition for "criminal responsibility" in the jury charge).

I would hold that the error in the jury charge was sufficiently egregious as to deprive the appellant of a fair trial.

12

### III. REFORMATION OF THE JUDGMENT

While I would conclude that the jury charge error resulted in egregious harm, I believe the proper disposition is to reform the judgment to reflect a conviction for the second-degree felony of sexual assault of a child.

### A. Applicable Law

Where the State fails to prove an aggravating element of an offense—here the bigamy element—but proves the essential elements of the offense, "the appellant would enjoy an 'unjust' windfall from an outright acquittal." *Thornton v. State*, 425 S.W.3d 289, 298 (Tex. Crim. App. 2014). An outright acquittal under such circumstances would be unjust because the result would involve usurping the fact finder's determination of guilt. *Id.* A court of appeals should limit the use of judgment reformation to those circumstances when the commission of a lesser offense can be established from the facts that the jury actually found. *Id.*

In determining whether to reform a judgment to reflect a conviction for a lesser-included offense, we must answer the following questions: (1) in the course of convicting appellant of sexual assault of a child, a first-degree felony, must the jury have necessarily found every element necessary to convict appellant for sexual assault of a child, a second-degree felony; and (2) conducting an evidentiary sufficiency analysis as though the appellant was convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense. *Id.* at 299–300. If the answer to both questions is yes, the court is required to avoid the "unjust" result of an outright acquittal

13

by reforming the judgment to reflect a conviction for the lesser-included offense. *Id.* at 300.

## B. Analysis

A second-degree felony offense for sexual assault of a child contains the same elements as a first-degree offense, minus the element referencing bigamous conduct under section 25.01. TEX. PENAL CODE ANN. § 22.011(a), (f). On each count, the jury, in the course of finding appellant guilty of sexual assault of a child, a first-degree felony, must have necessarily found every element necessary to convict appellant of a second-degree felony. *See Thornton*, 425 S.W.3d at 302. Furthermore, viewing the evidence in the light most favorable to the verdict, I am satisfied that a rational trier of fact could have found the essential elements of each count of sexual assault of a child, a second-degree felony, beyond a reasonable doubt. *See Johnson*, 364 S.W.3d at 293–94.

## IV. CONCLUSION

I would sustain appellant's issue alleging jury charge error, and remand this case to the trial court to reform the judgment to reflect a conviction for the offense of sexual assault of a child, a second-degree felony, and to conduct a new punishment hearing. *See Thornton*, 425 S.W.3d at 307. For the foregoing reasons, I respectfully dissent.

GREGORY T. PERKES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of October, 2015.

14